**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FREEDOM SOLUTIONS GROUP, L.L.C., an Illinois limited liability company,<br><br>   Plaintiff,<br><br>v.<br><br><br>XREF SOFTWARE SOLUTIONS NORTH AMERICA INCORPORATED, a Delaware corporation,<br><br>      and<br><br>XREF SOFTWARE SOLUTIONS LIMITED, an English private limited company,<br><br>   Defendants. | JURY TRIAL DEMANDED<br><br><br>No. _____ |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Microsystems, FREEDOM SOLUTIONS GROUP, L.L.C. d/b/a Microsystems ("Microsystems"), an Illinois limited liability company, by and through its attorneys, against Defendant XREF SOFTWARE SOLUTIONS NORTH AMERICA INCORPORATED, a Delaware corporation, and Defendant XREF SOFTWARE SOLUTIONS LIMITED, a private limited company organized under the laws of England (collectively, the "Defendants"), states as its Complaint and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

### Parties

1. Microsystems is a limited liability company organized and existing under the laws of the State of Illinois. Microsystems has a principal place of business at 3025 Highland

Pkwy., Suite 450, Downers Grove, IL 60515.  Microsystems provides cutting-edge software and innovative document technology solutions that help companies and law firms worldwide mitigate risk, improve authoring, create error-free documents and enhance document production efficiency.  Microsystems operates the website www.microsystems.com.

2.      Upon information and belief, Defendant XREF SOFTWARE SOLUTIONS NORTH AMERICA INCORPORATED is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 2155 Subida Al Cielo, Vista, CA 92084.

3.      Upon information and belief, Defendant XREF SOFTWARE SOLUTIONS LIMITED is a private limited company organized under the laws of England, with a place of business located at International House, 1 St Katharine's Way, London E1W 1UN.

4.      Defendants conduct business in the United States and in this jurisdiction including through the website xrefonline.com.  This website is accessible from anywhere in the United States, including this district.

### Jurisdiction

5.      This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq*. and more specifically under 35 U.S.C. § 271 *et seq*.  Microsystems seeks injunctive relief and actual damages, including Defendants' profits and Microsystems' costs and attorneys' fees under 35 U.S.C. §§ 284 and 285.  This Court has original subject matter jurisdiction over the matters raised herein pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

### Venue

6.      Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b) because Defendants regularly conduct business in this judicial district and have regular and established places of business in this judicial district, and/or because certain of the acts complained of herein occurred in this judicial district.  Upon information and belief,

2

Defendants are subject to personal jurisdiction in this Court because Defendants are currently doing and have done substantial business in this judicial district, including committing acts of patent infringement in this judicial district and elsewhere in the United States, and regularly sell or solicit sales of their products within this district, such that a substantial part of the events giving rise to the claims occurred in this district. Defendants are therefore subject to the venue of this Court.

### MICROSYSTEMS' RIGHTS

7.      Microsystems is the assignee of U.S. Patent No. 9,171,069 (the "'069 Patent" or the "Patent-in-Suit") and owns the entire right, title and interest in and to the '069 Patent.

8.      The '069 Patent is titled *Method and apparatus for analyzing a document* and was issued by the United States Patent and Trademark Office (the "USPTO") on October 27, 2015. The application which issued as the '069 Patent was filed on July 31, 2012 as U.S. Application No. 13/563,257. A true and correct copy of the '069 Patent is attached hereto as Exhibit A and is incorporated by reference herein.

9.      The '069 Patent is valid and enforceable at least until 20 years from the date of filing, or around July 31, 2032.

10.     Microsystems offers multiple products directly to clients and markets its products through its website at www.microsystems.com and via other publications. Microsystems offers products to clients that are also covered by or relate in whole or in part to the Patent-in-Suit.

11.     The '069 Patent contains claims directed to a method for generating an inconsistent phrase user interface and claims directed to a non-transitory computer readable medium comprising executable instructions that cause a processing device to generate an inconsistent phrase user interface.

12.    In particular, Microsystems has created and currently sells software under the name *EagleEye* that performs electronic document analysis and proofreading. Microsystems' *EagleEye* software includes Microsystems' proprietary "Inconsistent Phrases" feature and is covered by the '069 Patent. Microsystems' Inconsistent Phrases feature finds areas in a document where the phrasing varies by content, format or capitalization and could introduce risk, and it highlights these areas for a user.

13.    Microsystems' *EagleEye* software is sold with an indication that it is covered by the Patent-in-Suit. Microsystems' website, www.microsystems.com, also contains notice that the *EagleEye* software is covered by the Patent-in-Suit.

## COUNT I

### Direct Patent Infringement of U.S. Patent No. 9,171,069
### Pursuant to § 271(a) of the Patent Act (35 U.S.C. § 271(a))

14.    Microsystems adopts, restates and realleges each and every allegation previously set forth in this Complaint as if fully set forth in this Paragraph 14.

15.    Section 271(a) of the Patent Act (35 U.S.C. § 271(a)) provides, in relevant part:

*(a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.*

16.    Upon information and belief, Defendants, without permission or license from Microsystems, has unlawfully and wrongfully created an electronic document analysis software application that performs document proofreading. This software is marketed and sold under the name *XRef* (the "XRef Software"). The XRef Software is marketed to the legal industry.

17.    Upon information and belief, the XRef Software is a product that infringes the Patent-in-Suit and performs the proprietary and patented methods owned by Microsystems. The XRef Software is sold or offered for sale by Defendants in the United States and within this

CHICAGO/#2815893

district, and clients who implement or use the XRef Software also use or perform methods that are proprietary to Microsystems and covered by the Patent-in-Suit.

18. Defendants are direct competitors of Microsystems as they offer competitive software products in the legal services industry.

19. Defendants attended the International Legal Technology Association trade show, ILTACON 2015, in Las Vegas, Nevada on or around September 1, 2015. Despite a request from one of Microsystems' representatives, Defendants refused to provide a demonstration of their XRef Software at this time.

20. In the fall of 2015, Microsystems and Defendants competed for a contract to provide an electronic proofreading application to a particular law firm (the "Law Firm"). Both Microsystems and Defendants agreed to demonstrate their competing software products to the Law Firm so as to enable the Law Firm to determine whether to license one of the competing software products.

21. One of the evaluation criteria used by the Law Firm was "the ability to identify inconsistencies in terms, phrases, and references." Representatives from the Law Firm indicated to Microsystems that they were impressed with Microsystems' Inconsistent Phrases feature.

22. Microsystems advised the Law Firm in writing that Microsystems' *EagleEye* software—including the functionality of the Inconsistent Phrases feature—may be covered by one or more U.S. patents, and the Law Firm agreed to, among other things, not (and to not permit any third party to), attempt to reverse engineer Microsystems' *EagleEye* software.

23. Upon information and belief, when Defendants began demonstrating their XRef Software to the Law Firm, the XRef Software lacked the functionality of Microsystems'

5

patented Inconsistent Phrases feature and was unable to identify inconsistencies in terms, phrases and references.

24.     Upon information and belief, during Defendants' demonstration of the XREF Software, the Law Firm requested that Defendants add functionality so as to make Defendant's XRef Software capable of identifying inconsistencies in terms, phrases and references in a manner equivalent to Microsystems' patented Inconsistent Phrases feature.

25.     After working with the Law Firm during the demonstration period, Defendants added the requested functionality, referring to it as Defendants' "Phrase Checker" feature.

26.     Based, in large part on Defendants' addition of Microsystems' patented functionality, Defendants were awarded a contract with the Law Firm worth over $100,000 to purchase or license Defendants' XRef Software, and the Law Firm elected not to award the contract to Microsystems.

27.     On February 26, 2016, during an ILTA webinar presented by Travis Leon (Executive Director of Defendant XRef Software Solutions Limited in the United Kingdom), Defendants publicly announced that their XRef Software includes a Phrase Checker feature that "[c]hecks to make sure that terminology is consistently used in [a] document."

28.     Upon information and belief, this Phrase Checker feature infringes the Patent-in-Suit.

29.     Prior to February 26, 2016, Microsystems searched publicly available documents (including marketing materials provided through Defendants' website, www.xrefonline.com, and Defendants' Twitter page at twitter.com/xref_legal) and was unable to locate any references to Defendants' Phrase Checker feature.

6

30.     To date, Microsystems has been unable to obtain a copy of Defendants' XRef Software to evaluate, and Defendants have refused to demonstrate their XRef Software to Microsystems.

31.     Upon information and belief, at least the current version of Defendants' XRef Software infringes the Patent-in-Suit.  Defendants sell the infringing XRef Software to potential clients of Microsystems.  Defendants' actions have caused great loss, as well as immediate and irreparable injury, to Microsystems via direct infringement making, importing, selling, and/or offering for sale a software product that infringes the Patent-in-Suit.

32.     Defendants had constructive notice of the Patent-in-Suit on or around October 27, 2015, when the Patent-in-Suit issued, and/or had actual notice of the Patent-in-Suit prior to the filing of this Complaint.

33.     Defendants has sold or offered to sell, continues to sell or offer to sell, and has unlawfully imported into the United States products that infringe the Patent-in-Suit for Defendant's own benefit, including regular sales of and/or offers to sell infringing software products within this judicial district, in direct violation of Microsystems' exclusive rights under the Patent-in-Suit.

34.     Upon information and belief, the XRef Software infringes at least claim 13 of the Patent-in-Suit and/or enables Defendants to perform methods which infringe at least claim 1 of the Patent-in-Suit, resulting in direct infringement of at least claims 1 and 13 of the Patent-in-Suit.

35.     Upon information and belief, Defendants' entire business model is built on the sale of their XRef Software, and Defendants profits exclusively or at least in part from the aforesaid infringement of the Patent-in-Suit.  In at least the field of providing software products

CHICAGO/#2815893

to entities in the field of legal services, Microsystems and Defendants are direct or indirect competitors offering alternative software products to the same clients, and therefore sales by Defendants directly damage the actual or potential sales of Microsystems.

36.     As a direct and proximate result of the aforesaid infringement, Microsystems has been and will be greatly damaged, and has been and will be deprived of and prevented from receiving, if such further infringement is not restrained and enjoined by this Court, all the gains and profits to which Microsystems is lawfully entitled and that it would have derived and received, but for the aforesaid infringement by Defendants.

37.     Upon information and belief, Defendants have actual and constructive notice of Microsystems' rights respecting the patented technology.

38.     Upon information and belief, Defendants' infringement is willful and the decision to infringe the Patent-in-Suit is in egregious disregard of the law.

**COUNT II**

**<u>Induced Patent Infringement of U.S. Patent No. 9,171,069</u>**
**<u>Pursuant to § 271(b) of the Patent Act (35 U.S.C. § 271(b))</u>**

39.     Microsystems adopts, restates and realleges each and every allegation previously set forth in this Complaint as if fully set forth in this Paragraph 39.

40.     Section 271(b) of the Patent Act (35 U.S.C. § 271(b)) provides, in relevant part:

*(b) Whoever actively induces infringement of a patent shall be liable as an infringer.*

41.     Upon information and belief, Defendants' XRef Software is configured such that customers who utilize the XRef Software perform methods that infringe the Patent-in-Suit when using the XRef Software as directed by Defendants.  Defendants sell the infringing XRef Software to third parties (including potential clients of Microsystems), knowing that such third parties will perform methods in violation of Microsystems' exclusive rights under the Patent-in-

8

Suit. Defendants' actions have caused great loss, as well as immediate and irreparable injury, to Microsystems via indirect, induced infringement by providing an instrument to a third party to enable such third party to perform methods that infringe the Patent-in-Suit.

42. Defendants have sold or offered to sell, continue to sell or offer to sell, and have unlawfully imported into the United States, products that are configured to perform methods that infringe the Patent-in-Suit for Defendants' own benefit, including regular sales and/or offers to sell of software products using the infringing methods within this judicial district, in direct violation of Microsystems' exclusive rights under the Patent-in-Suit.

43. Upon information and belief, the XRef Software enables Defendants' clients to perform methods that infringe at least claim 1 of the Patent-in-Suit, resulting in induced or vicarious infringement of at least claim 1 of the Patent-in-Suit.

44. Upon information and belief, Defendants' entire business model is built on the sale of its XRef Software, and Defendants profits exclusively or at least in part from the aforesaid infringement of the Patent-in-Suit. In at least the field of providing software products to entities in the field of legal services, Microsystems and Defendants are direct or indirect competitors offering alternative software products to the same clients, and therefore sales by Defendants directly damage the actual or potential sales of Microsystems.

45. As a direct and proximate result of the aforesaid infringement, Microsystems has been and will be greatly damaged, and has been and will be deprived of and prevented from receiving, if such further infringement is not restrained and enjoined by this Court, all the gains and profits to which Microsystems is lawfully entitled and that it would have derived and received but for the aforesaid infringement by Defendants.

46.     Upon information and belief, Defendants have actual and constructive notice of Microsystems' rights respecting the patented technology

47.     Upon information and belief, Defendants knew or should have known that the importation, distribution, and/or sale of Defendants' XRef Software would induce actual (i.e., direct) infringement of the Patent-in-Suit.

48.     Upon information and belief, Defendants' infringement is willful and the decision to infringe the Patent-in-Suit is in egregious disregard of the law.

### COUNT III

### Contributory Patent Infringement of U.S. Patent No. 9,171,069 Pursuant to § 271(c) of the Patent Act (35 U.S.C. § 271(c))

49.     Microsystems adopts, restates and realleges each and every allegation previously set forth in this Complaint as if fully set forth in this Paragraph 49.

50.     Section 271(c) of the Patent Act (35 U.S.C. § 271(c)) provides, in relevant part:

*(c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.*

51.     Upon information and belief, Defendants' XRef Software is configured such that it performs all the steps of one or more methods recited in the Patent-in-Suit when activated by a customer using the XRef Software as directed by Defendants.  Defendants sell the infringing XRef Software to third parties (including potential clients of Microsystems), knowing that such third parties will use the XRef Software to perform methods in violation of Microsystems' exclusive rights under the Patent-in-Suit.  Defendants' actions have caused great loss, as well as immediate and irreparable injury, to Microsystems via contributory infringement by providing

CHICAGO/#2815893

an instrument to a third party to enable such third party to perform methods that infringe the Patent-in-Suit.

52.     Defendants have sold or offered to sell, continue to sell or offer to sell, and have unlawfully imported into the United States, products that are configured to perform methods that infringe the Patent-in-Suit when used by Defendants' customers for Defendants' own benefit, including regular sales and/or offers to sell of software products configured to perform infringing methods when activated by a user within this judicial district, in direct violation of Microsystems' exclusive rights under the Patent-in-Suit.

53.     Upon information and belief, the XRef Software performs methods which infringe at least claim 1 of the Patent-in-Suit when used by Defendants' clients, resulting in direct infringement of at least claim 1 of the Patent-in-Suit.

54.     Upon information and belief, Defendants' entire business model is built on the sale of its XRef Software, and Defendants profit exclusively or at least in part from the aforesaid infringement of the Patent-in-Suit.  In at least the field of providing software products to entities in the field of legal services, Microsystems and Defendants are direct or indirect competitors offering alternative software products to the same clients, and therefore sales by Defendants directly damage the actual or potential sales of Microsystems.

55.     As a direct and proximate result of the aforesaid infringement, Microsystems has been and will be greatly damaged and has been and will be deprived of and prevented from receiving, if such further infringement is not restrained and enjoined by this Court, all the gains and profits to which Microsystems is lawfully entitled and that it would have derived and received but for the aforesaid infringement by Defendants.

CHICAGO/#2815893

56.     Upon information and belief, Defendants have actual and constructive notice of Microsystems' rights respecting the patented technology

57.     Upon information and belief, Defendants knew that the method performed by the Phrase Checker feature of their XRef Software infringes the Patent-in-Suit when used by Defendants' customers, the Phrase Checker feature has no substantial noninfringing uses, and the Phrase Checker feature is especially made or adapted for use in infringing the Patent-in-Suit.

58.     Upon information and belief, Defendants' infringement is willful and the decision to infringe the Patent-in-Suit is in egregious disregard of the law.

## COUNT IV

### Violation of the Illinois Uniform
### Deceptive Trade Practices Act (815 ILCS 510/2)

59.     Microsystems adopts, restates and realleges each and every allegation previously set forth in this Complaint as if fully set forth in this Paragraph 59.

60.     Section 510/2 of the Illinois Uniform Deceptive Trade Practices Act (the "UDTPA") provides, in relevant part, that:

> *A person engages in deceptive trade practices when, in the course of his business, location, or occupation, he:*
>
> *        *        *
>
> *(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;*
>
> *        *        *
>
> *(12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.*

815 ILCS 510/2.

CHICAGO/#2815893

61.     Defendants have actual notice of the Patent-in-Suit owned by Microsystems but nevertheless advertises, offers, generates and sells a software product that it knows its clients believe is legal and does not infringe any third-party rights.  Those in the legal services industry who know of Microsystems and its patented methods and products, customers and/or third parties may be misled into thinking that Defendant's XRef Software is produced under a valid license or does not infringe Microsystems' Patent-in-Suit, all in violation of Section 2 of the UDTPA.

62.     Upon information and belief, Defendants have willfully engaged in deceptive trade practices prohibited by Section 2 of the UDTPA, with the intent to trade upon the goodwill established by Microsystems.

63.     By reason of Defendants' unlawful activities, Microsystems has been and is likely to be damaged, and unless Defendants' activities are restrained, Microsystems will continue to suffer serious and irreparable injury without a full and adequate remedy at law.

## PRAYER

WHEREFORE, Microsystems prays that this Court:

(a)     adjudge and decree that Defendants have directly infringed the Patent-in-Suit in violation of 35 U.S.C. § 271(a), have induced others to infringe the Patent-in-Suit in violation of 35 U.S.C. § 271(b), and have contributed to the infringement of the Patent-in-Suit in violation of 35 U.S.C. § 271(c);

(b)     adjudge and decree that Defendants' XRef Software infringes the Patent-in-Suit and performs or is used to perform infringing methods covered in the Patent-in-Suit;

(c)     preliminarily and permanently enjoin, by reason of said acts of infringement and pursuant to 35 U.S.C. § 283, Defendants, their representatives, officers, directors, agents, servants, employees and attorneys, and any and all persons in active concert with them, from directly or indirectly making or causing to be made, offering for sale, selling or causing to be sold, or using or causing to be used any product in accordance with or embodying any invention(s) or methods set forth and claimed in the Patent-in-Suit, including but not limited to the XRef Software and any infringing work product generated therewith;

13

(d)     order Defendants to account for all gains, profits and advantages realized from their manufacturing and marketing of work product built using the XRef Software resulting in infringement of the Patent-in-Suit and Defendants' unlawful use and practice of the invention(s) patented in and by the Patent-in-Suit, and other products or necessary accessories sold in connection therewith, and other products that infringe the Patent-in-Suit and accessories sold therewith, up to and including the time of trial;

(e)     order Defendants to pay to Microsystems such damages as have been sustained by Microsystems as a result of said infringement(s) by Defendants;

(f)     order a trebling of all damages awarded to Microsystems pursuant to 35 U.S.C. § 284;

(g)     order that Microsystems recover prejudgment interest from Defendants pursuant to 35 U.S.C. § 284 on damages awarded to Microsystems;

(h)     order Defendants to pay to Microsystems its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

(i)     order that Microsystems recover all other costs and disbursements that may be incurred by Microsystems in this action;

(j)     order Defendants, their representatives, officers, directors, agents, servants, employees and attorneys, and any and all persons in active concert with them, to fully compensate Microsystems for the preparation and distribution of corrective advertising; and

(k)     award Microsystems such other and further relief as this Court deems just and proper under the circumstances, including available remedies under the UDTPA.

## JURY TRIAL DEMAND

Microsystems hereby demands a trial by jury on all triable issues.

Respectfully submitted,

FREEDOM SOLUTIONS GROUP, L.L.C.

By:  _s/Thomas R. Dee_____
        One of Its Attorneys

CHICAGO/#2815893

Thomas R. Dee
Robert S. Rigg
John K. Burke
VEDDER PRICE P.C.
222 N. LaSalle St., Suite 2600
Chicago, Illinois 60601
Telephone: (312) 609-7500
Fax: (312) 609-5005
tdee@vedderprice.com
rrigg@vedderprice.com
jburke@vedderprice.com

Attorneys for Plaintiff
FREEDOM SOLUTIONS GROUP, L.L.C.

CHICAGO/#2815893